# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY MONEYHAM,

     Plaintiff,

     v.

UNITED STATES,

     Defendant.

CIVIL ACTION NO. 3:16-cv-01172

(MUNLEY, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a *pro se* personal injury action brought against the United States under the Federal Tort Claims Act ("FTCA") by a federal prisoner, Anthony Moneyham. In his complaint, Moneyham alleges that he was assaulted and battered by prison officials, and that he was subsequently placed in excessively tight restraints without receiving medical attention.[1] (Doc. 1; *see also* Doc. 23-1, at 134–36). He seeks and award of $45,000 in compensatory damages. (Doc. 23-1, at 134).

The United States has filed a motion to dismiss or, in the alternative, for summary judgment, together with a brief in support, a statement of

---

[1] Moneyham appears to be advancing a simple negligence claim with respect to the denial of medical care, having expressly disclaimed any medical or professional negligence claims. (*See* Doc. 10; Doc. 12; Doc. 13; Doc. 14; Doc. 15).

undisputed material facts, and several documentary exhibits, including two video recordings filed under seal. (Doc. 17; Doc. 22; Doc. 23; Doc. 23-1; *see also* Doc. 19; Doc. 20; Doc. 30). The plaintiff has filed a brief in opposition, a statement of disputed material facts, and a declaration in opposition to summary judgment. (Doc. 24; Doc. 24-1; Doc. 24-2). The United States has filed a reply brief. (Doc. 29).

This matter is now ripe for disposition.

## I. BACKGROUND

In his handwritten *pro se* complaint, Moneyham has alleged a personal injury claim against the United States, brought pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2674. He has alleged that he submitted an administrative claim to the BOP on November 12, 2015, which was denied on May 2, 2016. (Doc. 1, at 1). Moneyham timely filed his complaint in this civil action on June 16, 2016. (Doc. 1).

In his complaint, Moneyham alleges that:

> On Nov-20-14[,] while having my blood drawn[,] the lab technician[,] K. Lindsey[,] stated to Paramedic Potter[,] "He touch my tit[.]" Potter grab[bed] my hand[.] Officer Anderson came[,] took my hand from Potter and start[ed] pulling it[,] telling me to let him go[,] as though I was holding him[.] Then 2 lieutenants came[,] Lt. Scott and Lt. Seeba[.] Both started beating my arm with their batons[,] telling me to pull my arm in[,] while Officer

Anderson continue[d] . . . pull[ing] my hand and closing the food gate on it[.] Once Officer Anderson release[d] my hand and I pull[ed] my arm in[,] I had knots and cuts over my forearm[,] and blood running down [it.] I told Lt. Seeba I did not touch her[,] go look at the camera[.] Lt. Seeba stated[,] "You [are] going in restraints[.]" After about an hour or so[,] the use of force team came and I was place[d] in excessively tight restraints and place[d] in Cell 102 in G-Block. During the first 2 hour restraint check[,] Officer Arnold and Officer Missigman attack[ed] me while I was in the restraints[.] [They] punch[ed] and kick[ed] me repeatedly until the Lieutenant[,] name unknown[,] said[,] "Alright[,] that's enough[.]" The second 2 hour lieutenant restraint check[,] I was again attack[ed] while I was in the restraints[.] First[,] Lt. Seeba repeatedly punch[ed] me in my chest with close[d] fist[,] then an officer[,] name unknown[,] Officer Sullivan[,] and EMT Barth repeatedly beat me in my back with close[d] fist[,] one after the other one. The restraints [were] never adjusted to stop the discomfort and pain I was experiencing from the tightness of the restraints[.] I was left in the restraints for over 27 hours[,] . . . caus[ing] cuts to my side and wrists and damage [to] the nerve in my wrist[.] I was denied medical attention for the injury until I showed the wo[und]s to the warden while he was doing rounds[.] Then Warden Ebbert order[ed] Lt. White to take me to see medical[.] I was seen by MLP Alma[,] who refuse[d] to order the handcuffs to be remove[d] so that he could treat the cuts on my wrist[.] Lt[.] White took pictures of the wo[und]s.

(Doc. 1, at 1–3).

On November 12, 2015, Moneyham submitted an administrative tort claim on a Standard Form 95 ("SF-95") to the Bureau of Prisons, seeking $45,000 in damages for personal injury. In his SF-95, Moneyham stated:

- 3 -

While having my blood drawn[,] the lab technician[,] Lindsey[,] claim[ed] I grab[bed] and squeeze[d] her breast[.] Paramedic Potter grab[bed] my hand[,] holding it[.] Then Officer Anderson grab[bed] my arm [and] start[ed] pulling it[,] screaming ["]let me go["] as if I was holding him[.] Lieutenant Scott and Lieutenant Seeba start[ed] beating my arm with their batons[,] screaming ["]let him go["] as though I was holding Officer Anderson for about 2 minutes[.] My arm was bleeding with knots swollen all over. I was then place[d] in excessively tight restraints without receiving any medical attention for my arm. On the first restraint check[,] I was repeatedly punch[ed] with close[d] fist and kicked by Officer Arnold and Officer Missinman. On the second restraint check[,] Lieutenant Seeba repeatedly punch[ed] me in my chest with closed fist, then Officer Sullivan, an unknown officer, and EMT Barth each took turns beating me in my back with closed fist[s,] then another officer unknown kneed me in my chest as they [were] leaving[.] These staff member[s] assaulted me twice wh[i]le I was in restraints. I was place[d] in excessively tight [restraints] that cut both my wrists, my ankles, and my side[,] and during the[] restraint check[,] none of the medical person[n]el order[ed] the excessively tight restraints to be loosen[ed]. EMT Barth, MLP Fasciana, NRP Fahringer, and RN Schoonover.

(Doc. 23-1, at 134–35).

In support of its motion for summary judgment, the United States has submitted several testimonial declarations, along with copies of incident reports, use-of-force memoranda, restraint check logs, medical treatment notes, two video recordings, and other documentary evidence. As stated in the incident report, prepared by Warden Ebbert:

On November 20, 2014, at approximately 2:17 p.m., inmate Moneyham, Anthony #42280-424, became disruptive in G-Block, cell #223. Specifically, as medical staff were attempting to draw blood, inmate Moneyham assaulted the staff member by reaching up and grabbing her left chest area. Staff immediately called for assistance and waited for additional staff to arrive. The G-1#2 officer responded and attempted to apply hand restraints. Inmate Moneyham reached through the food slot and grabbed his left wrist. Upon the arrival of the Operations Lieutenant and the West Lieutenant, they each utilized their rapid rotation batons to free the grip of inmate Moneyham, freeing the staff member. The food slot was then secured. Due to inmate Moneyham's continued disruptive behavior, assaulting staff, and displaying signs that he was not in control of himself physically or emotionally as well as being a disruption to the institution, the Warden was contacted and authorized inmate Moneyham to be placed in immediate ambulatory restraints. At approximately 3:16 p.m., a Use of Force Team was assembled and confrontation avoidance procedures were initiated with positive results. Inmate Moneyham and his cellmate, inmate Alexander, Damion #06312-095, who was a non-participant, both submitted to hand restraints and were removed from the cell. Moneyham was escorted to the 2nd floor shower area, where he was medically assessed, metal detected, visually searched, given alternative clothing and placed into ambulatory restraints at 3:40 p.m. Inmate Moneyham was then escorted to cell G-102, where he will remain until he shows a compliant pattern of behavior. Inmate Alexander, Damion #06312-095, who was a non-participant was removed from the cell, medically Assessed, and returned to cell G-223. Inmate Moneyham sustained redness to his right arm. Inmate Alexander, Damion #06312-095, sustained no injuries. The staff members involved were medically assessed and one sustained redness to his left wrist and the other

sustained redness and tenderness to her left chest area.
(Doc. 23-1, at 36). Memoranda written by each of the staff members present supported this narrative description of the incident.

Restraint check logs do not reflect any use of force upon Moneyham at his first or second 2-hour lieutenant restraint checks. (*See, e.g.*, Doc. 23-1, at 42). At the second such check, and on several subsequent occasions, Moneyham was reportedly found "forcing his arms down into [the] restraints[,] causing them to appear tight." (*Id.*). The lieutenant advised Moneyham to stop doing so, but Moneyham reportedly remained defiant. (*Id.*). Medical treatment records similarly do not reflect the alleged attacks on Moneyham while in restraints or the injuries he claims to have suffered, and they document several medical evaluations, beginning with the application of ambulatory restraints and periodically throughout his time in restraints. (*See* Doc. 23-1, at 82–129).

The two video recordings submitted into the record include one depicting the original incident at Moneyham's cell door, filmed from a fixed surveillance camera overhead, and another depicting the cell extraction by the use-of-force team, filmed on a handheld camera by a member of the use-of-force team. The surveillance camera footage is consistent with the

version of events documented by prison officials. But due to the fixed camera's vantage point and the limited resolution of the video recording, the surveillance camera footage is also not necessarily inconsistent with Moneyham's version of events. The handheld cell extraction video footage is of limited relevance because it does not depict any of the time periods when Moneyham claims to have been subjected to excessive force.

Moneyham has responded with his own declaration, disputing the staff members' reports and attesting, in pertinent part, that:

> 4. On November-20-2014 EMT Potter came to the cell door and ask did I want to have labs done. I said yes[.] I place[d] my arm out the food gate[,] then the lab technician started drawing my blood[.] After I ask[ed] her how many bottles she had to draw[,] I then ask[ed] was the needle a clean one she's using. She became upset[,] told EMT Potter [to] give her gauze[.] [She] told me to put my arm out some more[,] then [she] sold EMT Potter [that] I touch[ed] her breast.

> 5. EMT Potter then grab[bed] my hand and was holding it.

> 6. Officer Anderson came [and] took my hand from EMT Potter and started pulling it[,] saying let his hand go.

> 7. Lieutenants Scott and Seeba both started beating my arm with batons[,] telling me to let Officer Anderson go as Officer Anderson kept pulling my hand and started closing the food gate on it.

> 8. Once my arm was release[d,] knots was all over it

and it was bleeding[.] I then told Lt. Seeba to go look at the video. He stated[,] "You [are] going in restraints[.]"

9. Counselor Diltz came to the door with the use of force team and ask[ed] was I going to su[b]mit to hand restraints[.] I complied to the order[.] I was escorted to the shower and place[d] in excessively tight restraints.

10. On the first 2 hour lieutenant restraint check[,] Officers Arnold and Missigman started kicking and punching me in the restraints as the lieutenant watch[ed].

11. On the second 2 hour lieutenant restraint check[,] Lieutenant Seeba started pu[n]ching me in my chest[.] Officer Sullivan[,] an unknown officer, and EMT [Barth] started beating me in my back in the restraints.

12. My hands beg[a]n to swell enormously[.] I ask[ed] for the restraints to be loosen[ed], but staff refuse[d] to loosen the restraints [despite] witnessing the swelling to my hands from the restraints being in the same position to[o] long.

13. Blisters started forming on my body and cuts on my wrists from the restraints. I requested medical treatment for the injuries[.] It was repeatedly denied.

14. On December the 3rd[,] 2014[,] the warden was doing rounds[.] I showed him the injuries[.] He ask[ed] me did I show it to the PA? And what [did] he say? I told the warden ["]yes["] and ["]keep it clean.["] The warden order[ed] Lieutenant White to take me to see medical.

(Doc. 24-2, at 1–3).

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) Dismissal Standard

Although the United States has not filed a Rule 12(b)(1) motion in this action, the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte. See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . . ."); *Johnson v. United States*, Civil No. 1:CV-08-0816, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009). Based on the pleadings and the materials submitted in connection with the pending summary judgment motion, we find it appropriate to recommend *sua sponte* dismissal of certain claims for lack of jurisdiction pursuant to Rule 12(b)(1).

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond

the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the latter category.

### B. Rule 56 Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary

judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary

judgment, to consider evidence that is not admissible at trial).

## III.    DISCUSSION

Moneyham's complaint appears to assert six separate tort claims against the United States for misconduct by BOP employees arising out of the November 20, 2014, incident: (1) assault and battery by EMT Potter, Officer Anderson, Lt. Scott, and Lt. Seeba at Moneyham's cell door.; (2) denial of immediate medical care for injuries he suffered during this initial incident; (3) assault and battery by Officer Arnold, Officer Missigman, and an unidentified lieutenant during the first 2-hour lieutenant restraint check; (4) assault and battery by Lt. Seeba, Officer Sullivan, an unidentified officer, and EMT Barth during the second 2-hour lieutenant restraint check; (5) the application of excessively tight restraints over a 27-hour period, during which members of the medical staff—EMT Barth, MLP Fasciana, NRP Fahringer, and RN Schoonover—failed to order correctional officers to loosen the restraints; and (6) the denial of medical care over a thirteen-day period, between November 20 and December 3, 2014, for injuries he suffered as a result of excessively tight restraints.

### A. Sovereign Immunity

As a sovereign, "[i]t is axiomatic that the United States may not be

sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). Under the FTCA, the United States has waived its sovereign immunity with respect to tortious conduct by employees of the federal government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(a)(2); *see also id.* § 2674; *Merando*, 517 F.3d at 164. The FTCA is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States and its employees. *See* 28 U.S.C. § 1346; *id.* § 2679(b). "[S]trict adherence to the terms and requirements of the FTCA is jurisdictional and cannot be waived." *Dilg v. U.S. Postal Serv.*, 635 F. Supp. 406, 407 (D.N.J. 1986).

### 1. *Denial of Medical Treatment*

In his complaint, Moneyham appears to have asserted two separate denial-of-medical-treatment claims. First, he has alleged that at the time of the original incident at his cell door, which led to his being placed in ambulatory restraints and transferred to another cell, he was denied

immediate medical treatment. Second, he has alleged that he was denied medical treatment over a period of thirteen days for the injuries he claims to have suffered as a result of being subjected to excessively tight restraints for a 27-hour period on November 20 and 21, 2014.[2] The first claim was addressed in passing in Moneyham's administrative claim form. The second claim, however, was not. Thus, this Court lacks subject matter jurisdiction with respect to the second denial-of-medical care claim because Moneyham has failed to exhaust his administrative remedies prior to filing suit.

As the FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

---

[2] In his complaint, Moneyham alleged that he received no medical treatment until he was able to show his injuries to the warden when the warden was making rounds. In his declaration, Moneyham has attested that this interaction with the warden took place on December 3, 2014, thirteen days after Moneyham was first placed in ambulatory restraints.

"Fulfillment of the administrative exhaustion requirement is essential to a court's subject matter jurisdiction over a claim under the FTCA. . . . [F]ailure to [establish] exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction." *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994) (citations omitted); *see also Gomez v. United States*, No. 1:14-CV-01176, 2016 WL 826899, at *3 (M.D. Pa. Mar. 3, 2016) ("Although the exhaustion requirement under the Prison Litigation Reform Act of 1995 is an affirmative defense and can be waived, the exhaustion of administrative remedies under the FTCA is jurisdictional and cannot be waived."). It is clear from the record before the Court, which includes a copy of Moneyham's administrative tort claim (Doc. 23-1, at 134–36), that Moneyham failed to exhaust administrative remedies with respect to this claim prior to filing suit.

Accordingly, it is recommended that Moneyham's FTCA claim concerning the denial of medical care over a thirteen-day period between November 20, 2014, and December 3, 2014, be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### 2. Assault and Battery Claims

Moneyham has alleged that he was assaulted and battered by EMT Potter, Officer Anderson, Lt. Scott, and Lt. Seeba during the initial incident at his cell door, by Officer Arnold, Officer Missigman, and an unidentified lieutenant during the first 2-hour lieutenant restraint check, and by Lt. Seeba, Officer Sullivan, an unidentified officer, and EMT Barth during the second 2-hour lieutenant restraint check.

"[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States*, 502 U.S. 301, 305 (1992); *see also* 28 U.S.C. § 2674; *Gould Elec. Inc. v. United States*, 220 F.3d 169, 179 (3d Cir. 2000). Under Pennsylvania law, "assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Millbrook v. United States*, Civil Action No. 3:15-CV-0832, 2016 WL 4734658, at *6 (M.D. Pa. Sept. 12, 2016).

"The FTCA waives the United States' sovereign immunity for certain intentional torts committed by law enforcement officers." *Millbrook v. United States*, 133 S. Ct. 1441, 1444 (2013). In relevant part, the FTCA

provides that:

> The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h). The Supreme Court of the United States has held that "the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Millbrook*, 133 S. Ct. at 1446 (addressing assault and battery claims under the FTCA arising out of the tortious conduct of BOP correctional officers).

Although this provision explicitly waives sovereign immunity with respect to tort claims against the United States arising out of assaultive conduct by law enforcement officers in its employ, it explicitly excludes such claims arising out of the assaultive conduct of federal employees who

are *not* investigative law enforcement officers from the scope of its waiver of sovereign immunity. Thus intentional tort claims under the FTCA arising out of the conduct of non-law enforcement officers such as EMT Potter and EMT Barth are barred by 28 U.S.C. § 2680(h). *See Millbrook*, 2016 WL 4734658, at *10 (entering summary judgment in favor of prison EMTs).

Accordingly, it is recommended that Moneyham's FTCA assault and battery claims arising out of the intentional conduct of EMT Potter and EMT Barth be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. Use of Force Claims

Moneyham has asserted assault and battery claims involving correctional officers arising from three separate incidents. First, he claims that he was assaulted and battered by Officer Anderson, Lt. Scott, and Lt. Seeba at his cell door. Second, he claims that he was assaulted and battered by Officer Arnold, Officer Missigman, and an unidentified lieutenant during the first 2-hour lieutenant restraint check. Third, he claims that he was assaulted and battered by Lt. Seeba, Officer Sullivan, and an unidentified correctional officer during the second 2-hour

lieutenant restraint check. In addition, Moneyham has claimed that unspecified correctional officers used excessive force when they placed him in excessively tight restraints for a period of 27 hours, and he alleges that medical personnel failed to direct the correctional officers to loosen the restraints.

The United States has moved for summary judgment on Moneyham's assault and battery claims concerning these correctional officers on the ground that these "incidental and necessary touchings by correctional officers of [an] inmate[] in the performance of their duties are not batteries, but privileged contacts." *Pircariello v. Fenton*, 491 F. Supp. 1026, 1038 (M.D. Pa. 1980). Under Pennsylvania law, "officials charged with the custody of prisoners are privileged to use force which is reasonable under the circumstances to maintain control of their charges." *Id.*; *see also Bakhtiari v. Spaulding*, No. 1:17-CV-00016, 2017 WL 2778524, at *6 (M.D. Pa. June 27, 2017) ("While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered an assault and battery."). Similarly, "[t]he placement of restraints on an inmate . . . would be privileged if that

conduct was reasonably necessary in the circumstances." *Picariello*, 491 F. Supp. at 1038–39. Thus, if a correctional officer uses reasonable force necessary to carry out his duties, that amount of force when applied to a prisoner is not tortious. *Id.* at 1041.

The United States has proffered several testimonial declarations and documentary exhibits to support their entitlement to summary judgment. With respect to the initial incident at Moneyham's cell door, the declarations and documentary exhibits suggest that the amount of force used by Officer Anderson, Lt. Scott, and Lt. Seeba was reasonable under the circumstances to regain control over Moneyham and terminate his assault on EMT Potter and Officer Anderson—this evidence suggests that it was Moneyham who was the aggressor, grabbing Lindsey, Potter, and Anderson in turn, despite instructions to desist. With respect to Moneyham's claims that he was assaulted and battered by several different officers at his first and second 2-hour restraint checks, the declarations and documentary exhibits suggest that these alleged uses of force did not occur—the evidence proffered by the United States suggests that these checks were uneventful, albeit with Moneyham reportedly agitated and uncooperative, leading the lieutenants conducting the checks

to determine that Moneyham should continue to remain in restraints. (*See, e.g.*, Doc. 23-1, at 42). Moreover, with respect to the tightness of his restraints, the declarations and documentary evidence suggest that the restraints were not excessively tight, but loose enough that they permitted adequate circulation unless the inmate manipulated the restraints to cause himself injury, which is what this evidence suggests that Moneyham did, with correctional officers and medical staff noting in the records on several occasions that they advised him to stop manipulating the restraints. (*See* Doc. 23-1, at 42–45, 87, 89, 94, 130, 131, 132, 133).

In opposition to the motion for summary judgment, Moneyham relies entirely on his own sworn declaration to contradict the evidence proffered by the United States. (Doc. 24-2). While the plaintiff's declaration amounts to little more than a recitation of the allegations first set forth in his complaint, it is nevertheless "an admissible form of evidence used to support factual positions during summary judgment." *Shelton v. Bledsoe*, 522 Fed. App'x 109, 112 (3d Cir. 2013) (per curiam). The Third Circuit has "consistently said that a pro se inmate . . . 'is in a decidedly difficult position from which to generate record evidence' and that affidavits 'are about the best that can be expected' at the summary judgment stage." *Id.*

(quoting *Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000)).

"Generally, a court must take the facts in the light most favorable to the non-moving party when disposing of a summary judgment motion. However, a 'limited exception' to this general rule exists where the nonmovant's version of the events may be disregarded to the extent those facts are 'blatantly contradicted' by the summary judgment record." *Millbrook*, 2016 WL 4734658, at *9; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). "While video footage has been found to establish this 'limited exception,' not all video footage or mechanical depictions will allow a court to disregard the non-movant's version of the events." *Millbrook*, 2016 WL 4734658, at *9; *see also Scott*, 550 U.S. at 380. "[C]ourts have declined to apply the limited exception set forth in *Scott v. Harris* where a videotape or other mechanical depiction does not capture the whole incident or the entire arrest, or where the videotape or mechanical depiction is susceptible to multiple reasonable interpretations." *Patterson v. City of Wildwood*, 354 Fed. App'x 695, 698

(3d Cir. 2009); *see also Mills v. City of Harrsiburg*, 589 F. Supp. 2d 544, 552 n.5 (M.D. Pa. 2008) (finding audio recording did not qualify for the *Scott* limited exception because it was susceptible to multiple reasonable interpretations), *aff'd*, 350 Fed. App'x 770 (3d Cir. 2009).

Here, the United States has submitted two video recordings. One of them, the handheld video recording of the cell extraction, does not depict any of the relevant events or time periods, and thus has no bearing on the facts in dispute. The other recording, the surveillance camera footage, is relevant to the first incident, but inconclusive—the video recording does not blatantly contradict Moneyham's account of the initial encounter at his cell door. Moreover, the surveillance camera footage does not depict either of the two restraint checks, which occurred two and four hours later, and none of the video footage sheds any light on the tightness of the restraints.

The United States has proffered testimony and documentary evidence to suggest that the quantum of force used by correctional officers was necessary and reasonable under the circumstances, and thus privileged, and a reasonable jury could agree. But a reasonable jury could also agree with Moneyham's version of events. Thus there remains a genuine dispute of material fact. Accordingly, it is recommended that

summary judgment be denied with respect to the plaintiff's use-of-force claims against the United States arising from the conduct of correctional officers in its employ.

## C. Denial of Immediate Medical Care

Moneyham has asserted a simple negligence claim against the United States, alleging that, at the time of the original incident at his cell door, he was denied immediate medical treatment before being placed in ambulatory restraints and transferred to another cell. The United States has proffered testimonial declarations and documentary evidence demonstrating that, immediately following the cell extraction and placement in ambulatory restraints, Moneyham was medically assessed by EMT Barth. (*See* Doc. 23-1, at 86–87, 89, 130). Other than some redness to the right forearm, no trauma or other injuries were noted. (*Id.* at 87, 130). In response, Moneyham has stated in his sworn declaration that immediately after the initial incident, his arm had "knots all over it and . . . was bleeding." (Doc. 24-2, at 2). Unlike the use-of-force issue, however, in this instance the video evidence proffered by the United States blatantly contradicts Moneyham's account: In the handheld camera footage, Moneyham's arms can be observed when he is disrobed by the use-

of-force team and then re-dressed in paper clothing; there is no sign whatsoever of any bleeding or contusions. *See Scott*, 550 U.S. at 380.

Accordingly, it is recommended that the United States be granted summary judgment with respect to Moneyham's FTCA claim that he was denied immediate medical care for injuries he suffered during the initial incident at his cell door.

## IV.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The plaintiff's simple negligence claim concerning the denial of medical care over a thirteen-day period between November 20, 2014, and December 3, 2014, and his assault and battery claims arising out of the intentional conduct of EMT Potter and EMT Barth be dismissed *sua sponte* for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure;

2.    The United States' motion to dismiss or, in the alternative, for summary judgment (Doc. 17) be **GRANTED in part and DENIED in part**;

3.    The Clerk be directed to enter **JUDGMENT** in favor of the United States with respect to the plaintiff's simple negligence claim

concerning the denial of immediate medical care for injuries suffered during the initial incident at his cell door on November 20, 2014; and

4.    The plaintiff's assault and battery claims arising from the conduct of correctional officers Lt. Scott, Lt. Seeba, Officer Anderson, Officer Arnold, Officer Missigman, Officer Sullivan, and two unidentified correctional officers on November 20, 2014, and his unreasonable use-of-force claim arising from the application of excessively tight restraints by the use-of-force team be set down for trial.

Dated: August 14, 2017            **_s/ Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY MONEYHAM,

       Plaintiff,

       v.

UNITED STATES,

       Defendant.

CIVIL ACTION NO. 3:16-cv-01172

(MUNLEY, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated August 14, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: August 14, 2017        _**s/ Joseph F. Saporito, Jr.**_
                              JOSEPH F. SAPORITO, JR.
                              United States Magistrate Judge